FILED
United States Court of Appeals
Tenth Circuit

July 18, 2024

Christopher M. Wolpert
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

JACOB THOMAS SHELL,

Defendant-Appellant.

No. 23-5086
(D.C. No. 4:21-CR-00537-GKF-1)
(N.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **HOLMES**, **SEYMOUR**, and **BALDOCK**, Circuit Judges.

---

Jacob Shell was charged with, and pled guilty to, one count of Child Abuse in Indian Country in violation of 18 U.S.C. §§ 1151, 1152, and 13, and Okla. Stat. tit. 21, § 843.5(A) (2021). He moved to dismiss the indictment for failing to state an offense, arguing that Oklahoma's child abuse statute should not be assimilated under the Assimilative Crimes Act ("ACA"). The district court denied his motion, and Mr. Shell appeals. Because assimilating the assault provisions of Oklahoma's child abuse statute would violate *Lewis v. United States*, 118 S. Ct. 1135 (1998), we reverse.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. While the court generally disfavors the citation of orders and judgments, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

I.

The facts of this case are tragic. In February 2020, Mr. Shell violently assaulted and threw his three-month-old son, H.S.,[1] to stop him crying. Mr. Shell's assault left H.S. hospitalized for several months and legally blind. As a result of Mr. Shell's abuse, H.S. continues to suffer severe physical and mental injuries and developmental delays.

Because H.S. is an Indian and Mr. Shell committed the assault in Indian territory in Oklahoma, federal prosecutors used the Assimilative Crimes Act ("ACA") to charge Mr. Shell in *federal* court for violating Oklahoma *state* law. As explained further below, the ACA allows federal prosecutors to prosecute conduct that would otherwise not be a federal crime by "borrowing" the laws of the state in which a federal enclave is located. *See generally* 18 U.S.C. § 13(a). Prosecutors charged Mr. Shell under the ACA for violating Oklahoma's child abuse statute, Okla. Stat. tit. 21, § 843.5(A) (2019) (current version at Okla. Stat. tit. 21, § 843.5(A)).[2]

---

[1] To protect the identity of the child, we refer to him as "H.S."

[2] At the time of Mr. Shell's conduct, Oklahoma's statute punished "[a]ny parent or other person who [] willfully or maliciously engage[d] in child abuse . . . ." Okla. Stat. tit. 21, § 843.5(A) (2019) (current version at Okla. Stat. tit. 21, § 843.5(A)). The statute defined "child abuse" as

> the willful or malicious harm or threatened harm or failure to protect from harm or threatened harm to the health, safety or welfare of a child under eighteen (18) years of age by another, or [] *the act of willfully or maliciously injuring, torturing or maiming a child under eighteen (18) years of age by another*.

*Id.* (emphasis added). Oklahoma's current child abuse statute moved the definition of "child abuse" to a separate subsection, but is, in nearly all other respects, virtually identical to its predecessor. *Compare id.*, *with* Okla. Stat. tit. 21, § 843.5(A), (O)(1) (2021). The minor differences between old and new versions have no bearing on our analysis.

Mr. Shell moved to dismiss the indictment for failure to state an offense, arguing that Oklahoma's child abuse statute could not be assimilated under the ACA and that prosecutors should have instead charged him under the federal assault statute, 18 U.S.C. § 113. He claimed that assimilating Oklahoma's statute violated the Supreme Court's *Lewis* test by effectively rewriting a federal offense definition and infringing onto a field Congress intended to wholly occupy, situations in which assimilation is foreclosed. *See Lewis*, 118 S. Ct. at 1141. The district court disagreed. It found assimilation of Oklahoma's statute was appropriate because the state's "child abuse statute has no federal equivalent" and, therefore, the statute "fills a clear and recognized gap in federal law." Rec., vol. I at 55. Accordingly, the court denied Mr. Shell's motion to dismiss. He ultimately entered a conditional guilty plea and was sentenced to 300 months' imprisonment with a five-year term of supervised release.

## II.

Mr. Shell appeals the district court's denial of his motion to dismiss, arguing that Oklahoma's child abuse statute cannot be assimilated under the ACA. We review de novo the question of whether a state law is properly assimilated. *United States v. Harris*, 10 F.4th 1005, 1012 (10th Cir. 2021).

The ACA "provides federal jurisdiction over certain criminal acts committed on" federal enclaves like military bases, national parks, federal facilities, and Indian

reservations. *United States v. Polk*, 61 F.4th 1277, 1279 (10th Cir. 2023).[3] Often when criminal acts occur on federal enclaves, they are punishable by federal criminal statutes. *Id.* But not always. Sometimes "no particular [federal] statute covers the defendant's conduct, meaning that it would not otherwise be a federal crime." *Id.* Because gaps in the federal criminal code remain, *see Williams v. United States*, 66 S. Ct. 778, 782 (1946), "the ACA steps in and generates a federal offense using the laws of the state in which the relevant [enclave] is located." *Polk*, 61 F.4th at 1279. Put simply, the ACA "borrows" state law to fill gaps in the federal criminal law. *See Lewis*, 118 S. Ct. at 1139. *See also Polk*, 61 F.4th at 1279 ("[The ACA] allows federal courts to 'borrow the relevant crime from preexisting state law,' thereby creating an applicable federal offense to fill the gap in the U.S. Code." (cleaned up) (quoting *United States v. Christie*, 717 F.3d 1156, 1170 (10th Cir. 2013))); *United States v. Jones*, 921 F.3d 932, 935 (10th Cir. 2019) ("Thus, the ACA performs a gap-filling function by 'borrowing state law' to bolster the 'federal criminal law that applies on federal enclaves . . . .'" (quoting *Lewis*, 118 S. Ct. at 1139)); *United States v. Sain*, 795 F.2d 888, 890 (10th Cir. 1986).

---

[3] In relevant part, the ACA's statutory language reads:

> Whoever within or upon any [federal enclave] is guilty of any act or omission which, *although not made punishable by any enactment of Congress*, would be punishable if committed or omitted within the jurisdiction of the State, Territory, Possession, or District in which such place is situated, by the laws thereof in force at the time of such act or omission, shall be guilty of a like offense and subject to a like punishment.

18 U.S.C. § 13(a) (emphasis added).

The critical question is how to determine whether a "gap" exists in federal law, such that assimilation under the ACA is appropriate. "By its own terms, the 'ACA applies only if the act or omission in question is *not* made punishable by any enactment of Congress.'" *Harris*, 10 F.4th at 1010 (quoting *United States v. Rocha*, 598 F.3d 1144, 1147–48 (9th Cir. 2010)). "[W]here there is no gap to fill," state law is not assimilated. *Lewis*, 118 S. Ct. at 1141. To determine whether such a gap exists, the Supreme Court outlined a two-part test in *Lewis*. First, a court must ask whether "the defendant's 'act or omission . . . [is] made punishable by *any* enactment of Congress.'" *Id.* (quoting 18 U.S.C. § 13(a)). If that answer is "no," then "ACA presumably would assimilate the statute." *Id.*

If the answer is "yes," we must further ask whether the application of state law is precluded because: (1) It "would interfere with the achievement of a federal policy"; (2) "[T]he state law would effectively rewrite an offense definition that Congress carefully considered"; or (3) "[F]ederal statutes reveal an intent to occupy so much of a field as would exclude use of the particular state statute at issue." *Id.*[4] "If any of these situations apply, then the state statute should not be assimilated, and the charge should be brought under the federal statute." *Harris*, 10 F.4th at 1011. This inquiry's lodestar "is one of *legislative intent*: Does applicable federal law indicate an intent to punish conduct such as the defendant's to the exclusion of the particular state statute at issue?" *Lewis*,

---

[4] We have observed that this list is "non-exhaustive" and that *Lewis*'s second step "is designed to be a fairly broad inquiry." *Harris*, 10 F.4th at 1013.

5

118 S. Ct. at 1142 (emphasis added). The ACA will not apply when both state and federal statutes "seek to punish approximately the same wrongful behavior," like, for example, "where [] differences [between the state and federal crimes] amount only to those of name, definitional language, or punishment" *Id.*

A.

Applying the principles in *Lewis*, we begin by asking whether Mr. Shell's "'act[s] or omission[s] . . . [are] made punishable by any enactment of Congress.'" *Id.* (quoting 18 U.S.C. § 13(a)). They are.

We look to the indictment to identify the relevant "acts or omissions." *See Williams*, 66 S. Ct. at 780–81. Here, prosecutors charged Mr. Shell for "willfully and maliciously injur[ing], tortur[ing], and maim[ing] H.S., an Indian child under the age of 18 years . . . by assaulting H.S. . . . with his hands by violently and forcibly throwing and shaking H.S.'s body." Rec., vol. I at 110. The government more or less concedes that such acts are punishable under various provisions of the federal assault statute, 18 U.S.C. § 113. Indeed, prosecutors likely could have prosecuted Mr. Shell under at least *three* subsections of § 113: § 113(a)(4), which punishes "[a]ssault by striking, beating, or wounding"; § 113(a)(6), which punishes "[a]ssault resulting in serious bodily injury"; and, most relevantly, § 113(a)(7), which punishes "[a]ssault resulting in substantial bodily injury to a spouse or intimate partner, a dating partner, *or an individual who has*

6

*not attained the age of 16 years.*" 18 U.S.C. § 113 (emphasis added). Accordingly, we hold that *Lewis*'s first step is satisfied.[5]

B.

We therefore turn to *Lewis*'s second step and ask whether the federal assault statute precludes application of Oklahoma's child abuse statute. Mr. Shell asserts that assimilating Oklahoma's statute would both (a) effectively rewrite an offense definition carefully considered by Congress, and (b) infringe onto a field federal statutes intended to occupy to the exclusion of state statutes, thereby contravening *Lewis*'s clear precepts. We agree and conclude that assimilation of the assaultive provisions of Oklahoma's child abuse statute is foreclosed by *Lewis*'s second step.

We first consider whether assimilating Oklahoma's statute would "effectively rewrite an offense definition that Congress carefully considered." *Lewis*, 118 S. Ct.

---

[5] We note that, curiously, neither party directly addresses whether Oklahoma's child abuse statute was divisible. This would seem relevant because Oklahoma's child abuse statute, then as now, proscribed both abusive acts of *commission* and abusive acts of *omission*. *See* Okla. Stat. tit. 21, § 843.5(A) (2019) (defining "child abuse" as "injuring, torturing or maiming a child" as well as the "failure to protect from harm or threatened harm to the health, safety or welfare of a child"). As Mr. Shell admits, there is no federal law covering abusive acts of omission, like neglectful abuse, emotional abuse, or medical abuse. He thus concedes there is some conduct proscribed by Oklahoma's statute that is not criminalized by federal law, and he suggests those provisions could be assimilated under the ACA. Reply at 10. These concessions seem to assume, but do not squarely offer, an answer to the question of divisibility. The government similarly acknowledges that Oklahoma's statute proscribes more conduct than is criminalized by federal law, but never states a clear position on its divisibility. It is not our role to opine on issues not squarely presented, and so we leave the thorny issue of divisibility for another day. *See Headrick v. Rockwell Int'l Corp.*, 24 F.3d 1272 (10th Cir. 1994). Rather, we interpret both parties' briefs as accepting that the statute is divisible, and we proceed on—but do not adopt—that premise.

7

at 1141. We recently confronted a similar inquiry in *United States v. Harris*. There, while camping in Yellowstone National Park, Mr. Harris pointed a gun at another camper amid a heated argument. *Harris*, 10 F.4th at 1009. Rather than bringing charges under 18 U.S.C. § 113 (the same federal statute relevant here), prosecutors used the ACA to assimilate Wyoming's assault statute, under which they charged and convicted Mr. Harris. *Id.* We reversed. We observed that § 113 was comprehensive in the conduct it criminalized: "The full federal assault statute lays out eight different assaultive acts, each with a corresponding punishment—from assault with intent to commit murder to simple assault." *Id.* at 1013. Section 113 also provided "specific definitions of terms used in the statute, including terms such as 'substantial bodily injury' and 'serious bodily injury.'" *Id.* at 1013–14. The section's "detailed and comprehensive nature" convinced us that assimilating the Wyoming statute "would substantially disrupt Congress's careful assault definitions." *Id.* at 1014.

All of what we said in *Harris* about § 113 remains true here. Assimilating the assault provisions of Oklahoma's statute would be just as disruptive to "Congress's careful assault definitions" in § 113 as assimilating Wyoming's statute in *Harris* would have been. Indeed, we have even more specific concerns in this case. Section 113(a)(7) punishes "[a]ssault resulting in substantial bodily injury to . . . an individual who has not attained the age of 16 years." 18 U.S.C. § 113(a)(7). Congress's choices in § 113(a)(7) to limit one kind of victim to individuals below a fixed age (16); to identify other possible victims via discrete relationships ("spouses," "intimate partners," "a dating partner"); to insert a detailed, defined term ("substantial bodily injury"); and to set a specific penalty

8

accordingly ("a fine . . . or imprisonment for not more than five years, or both") all "indicate an intent to punish conduct such as [Mr. Shell's] to the exclusion of" Oklahoma's statute. *Lewis*, 118 S. Ct. at 1142. Moreover, as just one example of how assimilation here would rewrite this federal definition, Oklahoma's child abuse statute set its age cutoff at *18*—two years beyond the age cutoff in § 113(a)(7) at *16*. Okla. Stat. tit. 21, § 843.5(A) (2019). Such an expansion of a federal offense via state law is impermissible. *See Williams*, 66 S. Ct. at 782 (holding that "a conflicting state definition does not enlarge the scope of the offense defined by Congress"). To assimilate Oklahoma's statute, then, would not only generally disrupt the assaultive scheme crafted by Congress in § 113, but do specific harm to what is, in all but name, the federal provision aimed at domestic and child assault, § 113(a)(7).

We also defer to *Harris*'s holding that the "detailed and comprehensive nature of [§ 113] also suggests Congress" intended to occupy the field of assaultive conduct to the exclusion of assaultive state provisions, like Oklahoma's. *Harris*, 10 F.4th at 1014. We observed there that (1) the "wide spectrum of assaultive conduct prohibited by § 113" and (2) the statute's "broad range of punishments" exhibited specific legislative judgments on the kinds of assaultive conduct to punish and how severely to punish it. *Id.* This remains true here. In *Harris*, we were loath to undermine the scheme Congress carefully constructed in § 113 by assimilating Wyoming's assault statute; we are similarly reticent here, although there are some distinctions between *Harris* and this case. The Wyoming statute in *Harris* was a "pure" assault statute, *see id.* at 1012; here, the statute at issue is a child abuse statute that criminalizes, among other acts, assaultive conduct. *See generally*

9

Okla. Stat. tit. 21, § 843.5(A) (2019). But *Lewis* is clear that assimilation is inappropriate "where both state and federal statutes seek to punish approximately the same wrongful behavior." *Lewis*, 118 S. Ct. at 1142. As noted, the assaultive provisions of Oklahoma's child abuse statute and § 113 similarly punish Mr. Shell's assaultive acts; the differences we discern "amount only to those of name, definitional language, or punishment," differences that do not warrant assimilation. *Id.* It may be that Mr. Shell's conduct is "more easily mapped onto the [Oklahoma] statute," however, "that is not the test." *Harris*, 10 F.4th at 1014.

Finally, we take seriously in *Harris* (and in *Lewis*) the admonition that the "ACA is only meant to fill gaps in [federal] law, not to provide an additional criminal legal scheme on every federal enclave." *Id.*; *see Lewis*, 118 S. Ct. at 1141. We are confident that "the federal assault statute thoroughly covers [Mr. Shell's alleged] conduct," *Harris*, 10 F.4th at 1014, and that there is no federal "gap" for the assaultive provisions of Oklahoma's statute to fill. To assimilate here would risk impermissibly "fill[ing] nonexistent gaps," which *Lewis* expressly prohibits. *Lewis*, 118 S. Ct. at 1141.

### III.

Mr. Shell should have been charged under the federal assault statute. He was not, and assimilation of the assaultive provisions of Oklahoma's child abuse statute via the ACA is inappropriate. Accordingly, his motion to dismiss should have been granted. We reverse.

Entered for the Court  
Per Curiam

UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT
Byron White United States Courthouse
1823 Stout Street
Denver, Colorado 80257
(303) 844-3157
Clerk@ca10.uscourts.gov

Christopher M. Wolpert
Clerk of Court

Jane K. Castro
Chief Deputy Clerk

July 18, 2024

Ms. Angela M Bonilla
Mr. Brian James Deer
Ms. Nicole Dawn Herron
Office of the Federal Public Defender
Eastern District of Oklahoma
112 North 7th Street
Muskogee, OK 74401

**RE:**    **23-5086, United States v. Shell**
Dist/Ag docket: 4:21-CR-00537-GKF-1

Dear Counsel:

Enclosed is a copy of the order and judgment issued today in this matter. The court has entered judgment on the docket pursuant to Fed. R. App. P. Rule 36.

Pursuant to Fed. R. App. P. Rule 40(a)(1), any petition for rehearing must be filed within 14 days after entry of judgment. Please note, however, that if the appeal is a civil case in which the United States or its officer or agency is a party, any petition for rehearing must be filed within 45 days after entry of judgment. Parties should consult both the Federal Rules and local rules of this court with regard to applicable standards and requirements. In particular, petitions for rehearing may not exceed 3900 words or 15 pages in length, and no answer is permitted unless the court enters an order requiring a response. *See* Fed. R. App. P. Rules 35 and 40, and 10th Cir. R.35 and 40 for further information governing petitions for rehearing.

Please contact this office if you have questions.

Sincerely,

Christopher M. Wolpert
Clerk of Court

cc: Elliot Paul Anderson
    Thomas Duncombe
    Stephanie Noel Ihler

CMW/art

**Sydney Arrington**

| | |
|---|---|
| **From:** | ca10_cmecf_notify@ca10.uscourts.gov |
| **Sent:** | Thursday, July 18, 2024 12:24 PM |
| **To:** | CM-ECF Intake OKND |
| **Subject:** | 23-5086 United States v. Shell "Case termination for order and judgment" (4:21-CR-00537-GKF-1) |

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing.

## Tenth Circuit Court of Appeals

**Notice of Docket Activity**

The following transaction was entered on 07/18/2024 at 11:20:13 AM Mountain Daylight Time and filed on 07/18/2024

| | |
|---|---|
| **Case Name:** | United States v. Shell |
| **Case Number:** | 23-5086 |
| **Document(s):** | Document(s) |

**Docket Text:**
[11105754] Reversed; Terminated on the merits after oral hearing; Written, unsigned, unpublished. Judges Holmes, Seymour and Baldock (Per Curiam). Mandate to issue. [23-5086]

**Notice will be electronically mailed to:**

Mr. Elliot Paul Anderson: elliot.anderson@usdoj.gov, caseview.ecf@usdoj.gov, william.foreman@usdoj.gov, michelle.schrader@usdoj.gov
Angela M Bonilla: angela_bonilla@fd.org, okn_ecf@fd.org, oke_ecf@fd.org
Mr. Brian James Deer: brian_deer@fd.org, okn_ecf@fd.org, oke_ecf@fd.org
Thomas Duncombe: thomas.duncombe@usdoj.gov, caseview.ecf@usdoj.gov, michelle.schrader@usdoj.gov, lori.frederick@usdoj.gov, william.foreman@usdoj.gov
Ms. Nicole Dawn Herron: nicole_herron@fd.org, lisa_lyles@fd.org
Stephanie Noel Ihler: stephanie.ihler@usdoj.gov, william.foreman@usdoj.gov, hunter.marone@usdoj.gov

The following document(s) are associated with this transaction:
**Document Description:** Order and Judgment

1

**Original Filename:** 23-5086.pdf
**Electronic Document Stamp:**
[STAMP acecfStamp_ID=1104938855 [Date=07/18/2024] [FileNumber=11105754-0]
[11ebf206a3c18b99ba2bdee9376a57e5bb0dbc5a73777a3915dd41c494b25f20089ccc0f69642f0539752
e5884f7c1e9df40a98dbf31e4d2ca90956ab64744b3]]

**Document Description:** Order Judgment Cover Letter
**Original Filename:** /opt/ACECF/live/forms/235086_11105754_136.pdf
**Electronic Document Stamp:**
[STAMP acecfStamp_ID=1104938855 [Date=07/18/2024] [FileNumber=11105754-1]
[3937847b4f0863567f1f4107fb8b2971bd10e6d5b3a7356b829e5fac6596d395812c3b397ec81dae5e2b5
d8fb10b215386bf9522c5f182059830b9e6b6741e4b]]
**Recipients:**

- Mr. Elliot Paul Anderson
- Angela M Bonilla
- Mr. Brian James Deer
- Thomas Duncombe
- Ms. Nicole Dawn Herron
- Stephanie Noel Ihler